[Cite as *State v. Gum*, 2019-Ohio-4748.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| ROBBIE GUM | : | Case No. 2018 CA 00177 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Case No. 2018 CR 0372


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      November 18, 2019


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

JOHN D. FERRERO      DONAVAN HILL
PROSECUTING ATTORNEY      116 Cleveland Avenue North
STARK COUNTY, OHIO      Canton, OH 44702

By:    KATHLEEN O. TATARSKY
      110 Central Plaza, South – Suite 510
      Canton, OH 44702

*Wise, Earle, J.*

{¶ 1}   Defendant-appellant Robbie Gum appeals the November 9, 2018 judgment of conviction and sentence of the Court of Common Pleas, Stark County, Ohio. Plaintiff-appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   We refer to the sixty-three-year-old victim in this matter as Jane Doe. In early 2018, Doe was preparing to sell her home, which required some repairs. Gum lived nearby and Doe hired him to complete the repairs. Gum had partially completed a ceiling repair, leaving a 4 inch by 3 foot area of the ceiling open. On the night of February 16, 2018, Doe arrived home late from a meeting to find a note on her door from Gum asking her to text him when she returned home. She did so, and Gum responded just after 11:00 p.m. stating he was coming over. Doe did not think this unusual as she considered Gum a friend.

{¶ 3}   Gum arrived, then went back home to retrieve the panel for the ceiling. When he returned, he crept into Doe's home, locked the door behind himself, crept up behind Doe and struck her with a flashlight on the right side of her head. He then stuck her on the left side of her head. Gum then put his hand over Doe's mouth and nose and told her if she screamed, he would kill her.

{¶ 4}   Gum turned off the lights and made Doe crawl to the front of her sofa and lay on the floor. Doe told Gum he just needed to go home, Gum responded "I'm already going to get 16 to 20 years for what I did to your head so I might as well finish the rest." He then lowered his pants, shoved his penis into Doe's face and ordered her to "suck."

Gum told Doe to do exactly as he asked of her or would "gut" her with the knife he was carrying.

{¶ 5} Doe was frightened and did as she was told as Gum had already demonstrated his willingness to bludgeon her with the flashlight. Gum ordered her to remove her clothing and she did so, after which Gum touched her body all over. Gum then produced some zip ties and told Doe he was going to use them to tie her up. Doe loudly begged him not to. Gum told her to shut up and he would not tie her up. Instead, he sat on a paint can and made Doe army-crawl to him and perform fellatio. He then directed her to crawl on her hands and knees to the bedroom and to "wiggle [her] ass" as she did so because he liked that.

{¶ 6} In the bedroom Gum ordered Doe onto the bed. Doe again begged Gum to just go home but Gum just repeated his order, still wielding the flashlight. Gum then again ordered Doe to perform fellatio while he took photos with his phone. Doe noticed Gum had a rag and asked what it was for. Gum stated he was going to shove it in her mouth while he raped her and was going to invite his buddy Jimmy over to watch. He then digitally penetrated her and declared he "could make a good video out of this." Doe continued begging Gum to just go home.

{¶ 7} Doe's ordeal went on for about four hours before Gum's demeanor suddenly changed. Doe then realized Gum was coming down from some type of high. Throughout the assault Gum had referred to Doe as bitch, slut, or whore. He then suddenly began referring to her by her name, told her she needed to call police, and offered to clean her head wounds. Doe again told him to just go home. Once he did, Doe immediately took herself to Aultman Hospital.

{¶ 8}   Doe was treated for a swollen hand and lacerations to her head which required eleven stapes to close. Doe was also seen by a sexual assault nurse who observed Doe to be exhausted, upset and agitated. Doe refused a rape kit because Gum was unable to obtain an erection and did not penetrate her with his penis. Further she just wanted to go home.

{¶ 9}   Doe also spoke to Lawrence Township police officer Patrick Arnold at the hospital. She provided Officer Arnold with Gum's name and address. As Arnold drove back to the police station to complete his report and obtain a warrant, he spotted a man walking down State Route 21 that matched Doe's description of Gum. Arnold and his partner stopped the man who identified himself as Gum and stated he was out looking for cattails for a craft project. As Arnold patted Gum down for weapons, Gum ran. After a short chase he was apprehended, provided with *Miranda* warnings and taken to the police station for an interview. Gum stated he fled because he had methamphetamine in his pocket.

{¶ 10} Gum was interviewed by Lawrence Township Police Chief David Brown. Gum was not wearing the outer clothing Doe had described, but the tee shirt he wore under his sweatshirt appeared to be blood stained. Gum's clothing was seized and sent to the Bureau of Criminal Investigation (BCI) for testing. Gum's interview was video recorded, but was accidently erased. Gum admitted he left a note on Doe's door, and had sent a text saying he was on his way over to her house, but maintained he never went to Doe's home the evening question.

{¶ 11} Officers next obtained permission from Gum's wife to search his home. The clothing Doe described was not found. However, on top of Gum's shed, officers located

a black bag containing the flashlight described by Doe as well as the cloth, knife, and zip ties. These items were also sent to BCI for testing.

{¶ 12} Officers also searched Doe's home. They observed a pool of blood on the living room floor and blood stains on the comforter in the bedroom. The comforter and the clothing Doe was wearing at the time of the attack were sent to BCI.

{¶ 13} DNA expert David Miller of the BCI tested the submitted items. The DNA of both Gum and Doe was found on the flashlight, the shirt Gum was wearing when he was arrested, and the comforter from Doe's bed.

{¶ 14} As a result of these events, in March, 2018, the Stark County Grand Jury returned an indictment charging Gum with one count of forcible rape, one count of kidnapping, one count of aggravated burglary, and one count of felonious assault. The kidnapping and burglary charges carried sexual motivation specifications.

{¶ 15} Gum pleaded not guilty to the charges and the matter proceeded to a jury trial on October 1, 2018. Gum's counsel argued in opening statement that the encounter was consensual.

{¶ 16} The state presented five witnesses that testified to the forgoing facts. Gum rested without producing witnesses or testifying on his own behalf. The jury found Gum guilty as charged.

{¶ 17} Gum was subsequently sentenced to an aggregate prison term of 22 years. He was further classified as a Tier III sex offender.

{¶ 18} Gum then filed an appeal, and the matter is before this court for consideration. He raises one assignment of error:

I

{¶ 19} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 20} In his sole assignment of error, Gum argues his convictions are against the manifest weight of the evidence. We disagree.

{¶ 21} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 22} Gum attacks the credibility of Doe and law enforcement officers involved in the investigation of this matter.

{¶ 23} Gum argues Doe's testimony was not believable because it was inconsistent with her reports to law enforcement as to digital penetration and whether or not Gum ejaculated. We note that at trial, however, Gum did not deny sexual conduct had taken place between himself and Doe. Rather, his defense was that the conduct was consensual. Gum's counsel for Gum argued in opening statement:

> Mr. Frame: Consent, that's what this case is going to be about. There
>
> was an ongoing sexual relationship between Mr. Gum and Miss

[Doe], and that is really what this case is about. Whether or not that sexual relationship was consensual.

Now, Mr. Gum is married, he has four children. He was having an ongoing sexual relationship with another woman. As the State has already said, he had a problem with drugs as well. So Mr. Gum was not making very wise choices. He was not acting in an appropriate manner. And he decided that he couldn't continue this relationship. And that is the decision which led to the allegations that you will be hearing about today and tomorrow.

Transcript of trial, volume 1 at 205-206.

{¶ 24} We therefore reject Gum's credibility arguments regarding consent. Moreover, as for any inconsistencies, it is well settled that "[w]hile the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996).

{¶ 25} As for Gum's attack on the credibility of the officers due to loss of the video of his interview, the physical and forensic evidence in this matter corroborated Doe's report. A video of Gum denying the charges would have done nothing to dispel the strength of appellee's case. We therefore reject Gum's argument.

{¶ 26} We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in finding Doe did not consent to the charged crimes and convicting Gum of rape, kidnapping, felonious assault, and aggravated burglary.

{¶ 27} The sole assignment of error is overruled. The judgment of conviction and sentence of the Stark County Court of Common Pleas is affirmed.


By Wise, Earle, J.

Wise, John, P.J. and

Baldwin, J. concur.


EEW/rw